UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Fort Lauderdale Division

Case No: _____

KAREEM WILLIAMS,

     Plaintiff,

v.

THE LAS OLAS COMPANY, INC.
d/b/a RIVERSIDE HOTEL,

     Defendant.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, KAREEM WILLIAMS, by and through his undersigned counsel, sues the Defendant, THE LAS OLAS COMPANY, INC. d/b/a. THE RIVERSIDE HOTEL, and alleges as follows:

## JURISDICTION AND VENUE

1.    This is an action for damages and to remedy violations of the rights of MR. WILLIAMS under the Civil Rights Act of 1964, as amended ("Title VII"), the Florida Civil Rights Act of 1992, as amended ("Chapter 760"), and the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102 to redress injuries done to him by the Defendant, THE LAS OLAS COMPANY, INC. d/b/a THE RIVERSIDE HOTEL ("Defendant").

2.    The unlawful acts which gave rise to this Complaint occurred within Broward County, Florida during the Plaintiff's employment with Defendant, making venue proper in this District pursuant to 28 U.S.C. § 1391.

1

## PARTIES

3.      At all times material hereto, Plaintiff has been a citizen and resident of Broward County Florida and is otherwise *sui juris*.

4.      As a gay, dark-skinned black man, originally born in the U.S. Virgin Islands and as an individual with first amendment rights, Plaintiff is a member of a protected class under the Civil Rights Act of 1964, as amended ("Title VII"), the Florida Civil Rights Act of 1992, as amended ("Chapter 760"), and the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102, because the terms, conditions, and privileges of his employment were altered because of his race, color, national origin, and gender, and because Plaintiff voiced his objection to the illegal activities committed by the Defendant.

5.      Defendant is not a government agency. At all times material hereto, Defendant was Plaintiff's employer as defined by law.

6.      Defendant has, at all times material hereto, employed 15 or more employees for each working day in each of twenty or more calendar weeks in the current or preceding year in accordance with Title VII and the FCRA (42 U.S.C. §2000e(b); Fla. Stat. § 760.02(7)).

7.      Plaintiff has exhausted his administrative remedies by filing a timely charge of discrimination against the Defendant with the Equal Employment Opportunity Commission, which was dually filed with the Florida Commission on Human Relations.

8.      Plaintiff's charge was filed within 300 days after the first instance of discrimination occurred.

9.      Plaintiff was issued a Notice of Right to Sue on September 25, 2019. This suit is filed in accordance with that Notice and within the applicable ninety (90) day time limitation (a copy of the Notice is attached hereto as Exhibit "A").

2

10.     The Florida Commission on Human Relations did not issue a finding on Plaintiff's charge within 180 days of the filing of said charges.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

11.     Defendant hired Plaintiff as a line cook on March 22, 2018 and subsequently wrongfully terminated him on December 21, 2018.

12.     As a line cook, Plaintiff's primary duties and responsibilities included preparing and cooking food, taking orders, and training other employees.

13.     Plaintiff was qualified for his position as a line cook based on his experience and training.

14.     Plaintiff's starting salary was $15.00 per hour.

15.     Throughout the Plaintiff's employment with the Defendant, he was the target of ongoing harassment and discrimination. He was also retaliated against for voicing his objection to the Defendant's unlawful activities.

16.     On July 15, 2018, Plaintiff's manager, Justin Ramos, began to blame the Plaintiff for kitchen mistakes for which Plaintiff was not in fact responsible, thus using Plaintiff as a scapegoat. Justin even sent Plaintiff t home for mistakes that made by Raymond, another line cook.

17.     On September 6, 2018, the Plaintiff said to Josh, a Hispanic Sous Chef manager, "why do we only have black dishwashers and all the line cook positions are other minorities?" Josh responded that those positions are reserved only for Haitians and other minorities. The Plaintiff shocked by this discriminatory practice.

18.     The Plaintiff spoke with Sandy, the Human Resources Director, about the discriminatory practice as described by Josh. Sandy said, "that is something that Toby has to fix in house. You need to have a meeting with Toby." Thus, despite the fact that Plaintiff brought his

complaint to human resources in accordance with Defendant's policy, and despite the fact that Sandy appeared to acknowledge the existence of the problem, Defendant did not take any steps to remedy the problem; instead placing the burden on Plaintiff.

19.     The Plaintiff told Sandy that he would speak with Toby.  Toby is a white executive chef.

20.     Plaintiff also told Sandy that he was frustrated that under trained people were assisting him.  The Plaintiff told Sandy that he was upset because Brian, the banquet manager, wrote him up for alleged poor performance just a few days prior. The Plaintiff did not agree with Brian's assessment because whenever he would ask for help, there was no one to help him, and managers did not check the line as required. The Plaintiff told Sandy that he felt he was being discriminated against and used as the scapegoat. Both Sandy and Brian are white.

21.     Also, in July/August 2018, Mr. Ramos said, "I do not understand the Black Lives Matters movement. It is so stupid." He also made comments that white women were more attractive than black women and said he did not want to work with black women. That same day, Mr. Ramos and other employees were discussing partying and dancing and Mr. Ramos said, "when I dance with someone, I get a bulge." He then said to Plaintiff directly, "look at my bulge now."

22.     Mr. Ramos left the company in August 2018.

23.     There was another chef manager named Justin. He is a white man. Around October 2018, Justin began to harass and discriminate against the Plaintiff by, *inter alia*, blaming Plaintiff for failing to label items and failing to wear gloves, neither of which accusations were true. Non-black managers rarely wore gloves; working the line and even tasting the food with their bare hands, putting their bare hands in the cole slaw or fry basket in violation of Florida's health code.

24.     On November 3, 2018, Chef Justin again accused the Plaintiff of not wearing gloves. The Plaintiff told him that he always wore gloves while handling food. Justin told the Plaintiff to shut up and that he was "full of bullshit."

25.     The next day was Plaintiff's scheduled day off, but he went to work in order to speak with Justin. Upon arriving, Plaintiff requested to meet with Chef Justin and Judith, the Front of House Manager. Plaintiff told Chef Justin that he did not appreciate how Chef Justin had spoken to him, that Plaintiff felt Chef Justin frequently accused him of doing things that he had not done, and that he wanted to start fresh. In response, Chef Justin said, "shut up. You are so full of shit. Take it up with Human Resources."

26.     The Plaintiff repeatedly tried to meet with Sandy, but she was always busy or in a meeting.

27.     One day, the Plaintiff was helping Mitch, an intern line cook, from the Philippines. The Plaintiff was going to make chicken wings. Right as the Plaintiff was about to wash his hands, Justin said, "you did not wash your hands." The Plaintiff replied, "I was going too." He said, "you are so full of bullshit."

28.     On December 5, 2018, there was an Asian woman pastry chef (name unknown) and she was preparing desserts on a sheet tray on top of a garbage bin. Everyone saw her and no one said anything, including the managers who were present.

29.     On December 6, 2018, the Plaintiff was finally able to speak with Sandy. The Plaintiff told her how Chef Justin was speaking to him and the discriminatory treatment. Sandy said, "I will talk to Toby and see what we can do."

30.     Around mid- December 2018, the Plaintiff met with Sandy and Hiko, the general manager. The Plaintiff told Hiko about the harassment and discrimination he had been facing. Hiko

said, "I will talk to Toby and give him a chance to fix all of this."    Thus, it was apparent that Defendant had not yet taken any steps to address the harassment and discrimination that Plaintiff had been reporting for several months.

31.     On December 21, 2018, the Plaintiff reported to work and Toby pulled him into the office. Toby said, "based upon my findings, I have determined you are the problem." Toby said that the Plaintiff was the "common denominator" of all the problems. Toby then said, "based on your work performance, I am going to have to suspend you. You always need help and I am not here to baby sit anyone." The Plaintiff asked if he could be transferred to another department, but Toby refused, saying, "I do not want to transfer a problem."

32.     On December 22, 2018, the Plaintiff called Hiko. Hiko is a white gay man. The Plaintiff wanted to make him aware of some comments that were said during a sensitivity training meeting regarding gay and transgender people. The Plaintiff told him that people were making nasty comments and did not want to be there. The Plaintiff told him how it made him very uncomfortable and he felt discriminated against.

33.      The Plaintiff never heard back from Human Resources.

34.     A week later, the Plaintiff called Sandy with questions on his health insurance because he had received an email. Sandy said, "you should have called me before." The Plaintiff told her that he was told to wait on Human Resources to contact him. She checked the Plaintiff's file and said that he was terminated for not wearing gloves and that he was no longer allowed back on the property.

35.     Plaintiff has engaged the undersigned attorney to prosecute his claims and is entitled to recover his attorney's fees from Defendant pursuant to statute.

### COUNT I: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
**(Discrimination on the Basis of Race)**

6

36.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 35, inclusive, as though same were fully re-written here

37.     Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, §§703(a), 706(a), and 706(g) for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was discriminated against on the basis of his race, black.

38.     Justin Ramos, Manager, Hiko, General Manager, Chef Justin, Manager, Josh, Sous Chef Manager, Sandy, Human Resources Director, Toby, Executive Chef, and Brian, Banquet Manager, at all times relevant, were acting within the course and scope of their employment for Defendant.

39.     Because Plaintiff is black, he was discriminated against by other employees, and the Defendant refused to take any action to prevent the discrimination.

40.     Upon information and belief, non-black employees are not permitted to be harassed by their co-workers.

41.     Upon information and belief, the complaints of non-black employees are taken seriously and addressed.

42.     Upon information and belief, non-black employees are not required to wear gloves when preparing food.

43.     Because Plaintiff is black, he was harassed, used as a scapegoat for mistakes other employees made, constantly accused of not wearing gloves, accused of stealing food, and cursed at by managers, and the Defendant did nothing to protect him from the discrimination.

44.     Because Plaintiff is black, Mr. Ramos told him, "I do not understand the Black Lives Matter movement. It is stupid."

45.     Because Plaintiff is black, Mr. Ramos told him that white women were more attractive than black women and that he did not want to work with black women.

46.     Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 USC §2000e2(a)(1) which resulted in Plaintiff, KAREEM WILLIAMS, being discriminated against.

47.     Plaintiff is entitled to such affirmative relief as may be appropriate, including but not limited to, lost wages, benefits, and compensation for emotional distress pursuant to the provisions of Title VII of the Civil Rights Act of 1964, §706(g).

48.     Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for his protected rights under Title VII of the Civil Rights Act of 1964. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in an amount to be determined at trial.

WHEREFORE, Plaintiff hereby requests that this Honorable Court grant Plaintiff judgment against Defendant to compensate him for past and future pecuniary losses, including back pay, front pay, liquidated damages, injury to his professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at trial and in accordance with The Civil Rights Act of 1964, §706(g); attorney's costs, fees, and such other relief as the Court deems just and appropriate.

## COUNT II: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
### (Discrimination on the Basis of Race)

49.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 35, inclusive, as though same were fully re-written here.

50.     The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

51.     Plaintiff is black and therefore a member of a protected class.

52.     Because Plaintiff is black, he was discriminated against by other employees, and the Defendant refused to take any action to prevent the discrimination.

53.     Because Plaintiff is black, Mr. Ramos told him, "I do not understand the Black Lives Matter movement. It is stupid."

54.     Because Plaintiff is black, Mr. Ramos told him that white women were more attractive than black women and that he did not want to work with black women.

55.     Because Plaintiff is black, he was harassed, used as a scapegoat for mistakes other employees made, constantly accused of not wearing gloves, accused of stealing food, and cursed at by managers, and the Defendant did nothing to protect him from the discrimination.

56.     Upon information and belief, non-black employees are not permitted to be harassed by their co-workers.

57.     Upon information and belief, the complaints of non-black employees are taken seriously and addressed.

58.     Upon information and belief, non-black employees are not required to wear gloves when handling food.

59.     At all relevant and material times, Defendant failed to comply with the FCRA.

60.     The discrimination of Plaintiff by Defendant was caused by Defendant being aware of Plaintiff's race.

61.     At all times relevant, including the time of the unlawful and discriminatory treatment, Defendant was aware that Plaintiff was Black.

62.     At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to him by Defendant.

63.     The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

64.     Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of his race in violation of the FCRA with respect to its decision to treat Plaintiff differently from other employees.

65.     Plaintiff's discrimination was directly and proximately caused by Defendant's unjustified discrimination against Plaintiff because he is Black, in violation of the FCRA.

66.     Any allegedly nondiscriminatory reason for the treatment of Plaintiff asserted by Defendant is a mere pretext for the actual reasons for the treatment; namely, Plaintiff's race.

67.     Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to his race.  The discrimination on the basis of race constitutes unlawful discrimination.

68.     As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered serious economic losses, punitive damages, as well as mental pain and suffering.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual

damages suffered, compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress, liquidated damages, punitive damages, prejudgment interest on his damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

<u>**COUNT III: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**</u>
**(Discrimination on the Basis of Color)**

69.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 35, inclusive, as though same were fully re-written here.

70.     Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, §§703(a), 706(a), and 706(g) for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was discriminated against on the basis of his color, dark-skinned.

71.     Justin Ramos, Manager, Hiko, General Manager, Chef Justin, Manager, Josh, Sous Chef Manager, Sandy, Human Resources Director, Toby, Executive Chef, and Brian, Banquet Manager, at all times relevant, were acting within the course and scope of their employment for Defendant.

72.     Because Plaintiff is dark-skinned, he was discriminated against by other employees, and the Defendant refused to take any action to prevent the discrimination.

73.     Upon information and belief, non-dark-skinned employees are not permitted to be harassed by their co-workers.

74.     Upon information and belief, the complaints of non-dark-skinned employees are taken seriously and addressed.

75.     Upon information and belief, non-dark-skinned employees are not required to wear gloves when handling food.

76.    Because Plaintiff is dark-skinned, he was harassed, used as a scapegoat for mistakes other employees made, constantly accused of not wearing gloves, accused of stealing food, and cursed at by managers, and the Defendant did nothing to protect him from the discrimination.

77.    Because Plaintiff is dark-skinned, Mr. Ramos told him, "I do not understand the Black Lives Matter movement. It is stupid."

78.    Because Plaintiff is dark-skinned, Mr. Ramos told him that white women were more attractive than black women and that he did not want to work with black women.

79.    Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 USC §2000e2(a)(1) which resulted in Plaintiff, KAREEM WILLIAMS, being discriminated against.

80.    Plaintiff is entitled to such affirmative relief as may be appropriate, including but not limited to, lost wages, benefits, and compensation for emotional distress pursuant to the provisions of Title VII of the Civil Rights Act of 1964, §706(g).

81.    Plaintiff, based on information and belief, alleges that Defendant's actions were done with malice, and with disregard for his protected rights under Title VII of the Civil Rights Act of 1964. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in an amount to be determined at trial.

WHEREFORE, Plaintiff hereby requests that this Honorable Court grant Plaintiff judgment against Defendant to compensate him for past and future pecuniary losses, including back pay, front pay, liquidated damages, injury to his professional reputation, and emotional pain and suffering caused by Defendant's discriminatory treatment in an amount to be determined at

trial and in accordance with The Civil Rights Act of 1964, §706(g); attorney's costs, fees, and such other relief as the Court deems just and appropriate.

## COUNT IV: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
### (Discrimination on the Basis of Color)

82.     Plaintiff incorporates herein the allegations contained in paragraphs 1 through 35, inclusive, as though same were fully re-written here.

83.     The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

84.     Plaintiff is dark-skinned and therefore a member of a protected class.

85.     Because Plaintiff is dark-skinned, he was discriminated against by other employees, and the Defendant refused to take any action to prevent the discrimination.

86.     Upon information and belief, non-dark-skinned employees are not permitted to be harassed by their co-workers.

87.     Upon information and belief, the complaints of non-dark-skinned employees are taken seriously and addressed.

88.     Because Plaintiff is dark-skinned, he was harassed, used as a scapegoat for mistakes other employees made, constantly accused of not wearing gloves, accused of stealing food, and cursed at by managers, and the Defendant did nothing to protect him from the discrimination.

89.     Because Plaintiff is dark-skinned, Mr. Ramos told him, "I do not understand the Black Lives Matter movement. It is stupid."

90.     Because Plaintiff is dark-skinned, Mr. Ramos told him that white women were more attractive than black women and that he did not want to work with black women.

91.     At all relevant and material times, Defendant failed to comply with the FCRA.

92.     The discrimination of Plaintiff by Defendant was caused by Defendant being aware of Plaintiff's color.

93.     At all times relevant, including the time of the unlawful and discriminatory treatment, Defendant was aware that Plaintiff was dark-skinned.

94.     At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to him by Defendant.

95.     The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

96.     Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on account of his color in violation of the FCRA with respect to its decision to treat Plaintiff differently from other employees.

97.     Plaintiff's discrimination was directly and proximately caused by Defendant's unjustified discrimination against Plaintiff because he is dark-skinned, in violation of the FCRA.

98.     Any allegedly nondiscriminatory reason for the treatment of Plaintiff asserted by Defendant is a mere pretext for the actual reasons for the treatment; namely, Plaintiff's color.

99.     Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to his color.  The discrimination on the basis of color constitutes unlawful discrimination.

14

100.    As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered serious economic losses, punitive damages, as well as mental pain and suffering.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress, liquidated damages, punitive damages, prejudgment interest on his damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

## COUNT V: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (Discrimination on the Basis of Sex)

101.    Plaintiff incorporates herein the allegations contained in paragraphs 1 through 35, inclusive, as though same were fully re-written here.

102.    Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, §§703(a), 706(a), and 706(g) for damages caused by Defendant's unlawful employment practices committed against Plaintiff because Plaintiff was discriminated on the basis of his sex, gay male.

103.    Justin Ramos, Manager, Hiko, General Manager, Chef Justin, Manager, Josh, Sous Chef Manager, Sandy, Human Resources Director, Toby, Executive Chef, and Brian, Banquet Manager, at all times relevant, were acting within the course and scope of their employment for Defendant.

104.    Because Plaintiff is a gay man, he was discriminated against by other employees, and the Defendant refused to take any action to prevent the discrimination.

105.    Upon information and belief, heterosexual male employees are not permitted to be harassed by their co-workers.

106.    Upon information and belief, the complaints of heterosexual employees are taken seriously and addressed.

107.    Because Plaintiff is gay, Mr. Ramos made an inappropriate comment to him once during a conversation about dancing. Mr. Ramos said to the Plaintiff, "when I dance with someone, I get a bulge." He then looked directly at the Plaintiff and said, "look at my bulge now."

108.    Mr. Ramos would not have made this comment to a heterosexual male because a heterosexual male would not be expected to look at another male's genital region.

109.    During a sensitivity training meeting regarding gay and transgender people, discriminatory comments were made by people who attended. When the Plaintiff reported these comments to the Defendant, nothing was done.

110.    Upon information and belief, gay male employees are not held to the same standard as heterosexual male employees.

111.    Defendant engaged in unlawful employment practices in violation of Section 703(a)(1) of Title VII, 42 USC §2000e2(a)(1) which resulted in Plaintiff, KAREEM WILLIAMS, being discriminated against.

112.    Plaintiff is entitled to such affirmative relief as may be appropriate, including but not limited to, lost wages, benefits, and compensation for emotional distress pursuant to the provisions of Title VII of the Civil Rights Act of 1964, §706(g).

113.    Plaintiff, based on information and belief, alleges that Defendant actions were done with malice, and with disregard for his protected rights under Title VII of the Civil Rights Act of 1964. Defendant, by and through its officers, and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees. Therefore, Plaintiff is also entitled to punitive damages from Defendant in an amount to be determined at trial.

WHEREFORE, Plaintiff hereby requests that this Honorable Court grant Plaintiff judgment against Defendant to compensate him for past and future pecuniary losses, including back pay, front pay, injury to his professional reputation, punitive damages, and emotional pain and suffering caused by Defendant discriminatory treatment in an amount to be determined at trial and in accordance with The Civil Rights Act of 1964, §706(g); attorney's fees, costs, together with interest thereon, and such other relief as the Court deems just and appropriate.

## COUNT VI: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
### (Discrimination on the Basis of Sex)

114.    Plaintiff incorporates herein the allegations contained in paragraphs 1 through 35, inclusive, as though same were fully re-written here.

115.    The FCRA forbids discrimination on the basis of race, color, religion, sex, pregnancy, national origin, age, handicap, or marital status and thereby to protect their interest in personal dignity, to make available to the state their full productive capacities, to secure the state against domestic strife and unrest, to preserve the public safety, health, and general welfare, and to promote the interests, rights, and privileges of individuals within the state.

116.    The Florida Civil Rights Act of 1992 shall be construed according to the fair import of its terms and shall be liberally construed to further the general purposes stated in this section and the special purposes of the particular provision involved.

117.    Plaintiff is a gay man, and therefore a member of a protected class.

118.    Because Plaintiff is a gay man, he was discriminated against by other employees, and the Defendant refused to take any action to prevent the discrimination.

119.    During a sensitivity training meeting regarding gay and transgender people, discriminatory comments were made by people who attended. When the Plaintiff reported these comments to the Defendant, nothing was done.

17

120.    Because Plaintiff is gay, Mr. Ramos made an inappropriate comment to him once during a conversation about dancing. Mr. Ramos said to the Plaintiff, "when I dance with someone, I get a bulge." He then looked directly at the Plaintiff and said, "look at my bulge now."

121.    Mr. Ramos would not have made this comment to a heterosexual male because a heterosexual male would not be expected to look at another male's genital region.

122.    Upon information and belief, heterosexual male employees are not permitted to be harassed by their co-workers.

123.    Upon information and belief, the complaints of heterosexual employees are taken seriously and addressed.

124.    Upon information and belief, gay male employees are not held to the same standard as heterosexual employees.

125.    At all relevant and material times, Defendant failed to comply with the FCRA.

126.    The discrimination of Plaintiff by Defendant was caused by Defendant being aware that Plaintiff is a gay man.

127.    At all times relevant, including at the time of the unlawful and discriminatory treatment, Defendant was aware that Plaintiff was a gay man.

128.    At the time of the unlawful discrimination, Plaintiff did perform and excel at the performance of the essential functions assigned to him by the Defendant.

129.    The failure of Defendant to adhere to the mandates of the FCRA was willful and its violations of the provisions of the FCRA were willful.

130.    Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights, discriminated against Plaintiff on

account of him being a gay male in violation of the FCRA with respect to its decision to treat Plaintiff differently from other employees.

131.    Defendant's treatment of Plaintiff was directly and proximately caused by Defendant's unjustified discrimination against Plaintiff because he is a gay man, in violation of the FCRA.

132.    Any allegedly nondiscriminatory reason for the treatment of Plaintiff asserted by Defendant is a mere pretext for the actual reasons for the treatment; namely, Plaintiff being a gay man. Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from discrimination due to his sex. The discrimination on the basis of sex constitutes unlawful discrimination.

133.    As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered serious economic losses, as well as mental pain and suffering.

WHEREFORE, Plaintiff hereby requests this Court enter judgment against the Defendant for all wages and benefits the Plaintiff would have received but for the discrimination, including actual damages suffered, compensatory damages under the FCRA for embarrassment, anxiety, humiliation, and emotional distress, liquidated damages, punitive damages, prejudgment interest on his damages award, attorney's fees, costs, and such other and further relief as this Court deems just and appropriate.

## COUNT VII: VIOLATION OF THE FLORIDA PRIVATE SECTOR WHISTLEBLOWER ACT

134.    Plaintiff incorporates herein the allegations contained in paragraphs 1 through 35, inclusive, as though same were fully re-written here.

135.    The private sector Whistleblower's Act, Fla. Stat. §448.102, provides that an employer may not take any retaliatory personnel action against an employee because the employee

has: (1) disclosed, or threatened to disclose, to any appropriate governmental agency, under oath, in writing, an activity, policy, or practice of the employer that is in violation of a law, rule, or regulation; (2) provided information to, or testified before, any appropriate governmental agency, person, or entity conducting an investigation, hearing, or inquiry into an alleged violation of a law, rule, or regulation by the employer; (3) objected to, or refused to participate in, any activity, policy, or practice of the employer which is in violation of a law, rule, or regulation. § 448.102, Fla. Stat.

136.    Plaintiff objected to the unlawful activities committed by the Defendant, *inter alia*, (i) Defendant allowing employees to prepare and handle food without gloves in violation of Florida's health code; and (ii) Defendant's discriminatory employment practices. At all relevant and material times, Defendant failed to comply with the Private Sector Whistleblower's Act, Fla. Stat. § 448.102.

137.    At all times relevant, including at the time of the unlawful termination, Defendant was aware that Plaintiff had objected to the unlawful activities committed by the Defendant.

138.    At the time of the unlawful termination, Plaintiff did perform and excel at the performance of the essential functions assigned to him by Defendant.

139.    Plaintiff was highly qualified for the position, and was only retaliated against because he objected to the illegal activities committed by the Defendant.

140.    Defendant is a large, privately-owned business, and therefore a sophisticated employer who has knowledge of the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102.

141.    The failure of Defendant to adhere to the mandates of the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102 was willful.

142.     Defendant, through its practices and policies as an employer, willfully, and with malicious or reckless disregard of Plaintiff's protected rights through the State of Florida, retaliated against Plaintiff on account of him objecting to the unlawful activities committed by the Defendant in violation of the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102 with respect to its decision to terminate the Plaintiff.

143.     Plaintiff's termination from employment was directly and proximately caused by Defendant retaliating against the Plaintiff for objecting to the unlawful activities committed by the Defendant.

144.     Any allegedly nonretaliatory reason for the termination of Plaintiff's employment asserted by Defendant is a mere pretext for the actual reasons for the termination from employment; namely, Plaintiff objecting to the unlawful activities committed by the Defendant.

145.     Defendant's actions were malicious and were recklessly indifferent to Plaintiff's rights protecting persons from retaliatory actions despite the Plaintiff objecting to the illegal activities committed by the Defendant.

146.     As a direct and proximate result of Defendant's intentional conduct, Plaintiff has suffered serious economic losses including back pay, front pay, and compensatory damages for a willful violation of the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102.

147.     Pursuant to the Florida Private Sector Whistleblower Act, Fla. Stat. § 448.102 Plaintiff is entitled to costs of this action and reasonable attorney's fees.

WHEREFORE, Plaintiff hereby demands judgment against Defendant, including: (1) reinstatement of Plaintiff to the same position held before Defendant's retaliatory action against Plaintiff, or to an equivalent position; (2) reinstatement of full fringe benefits and seniority rights to Plaintiff; (3) compensation to Plaintiff for lost wages, benefits, and other remuneration; (4)

assessment against Defendant of reasonable costs and attorney's fees of this action; and (4) such further relief as the court deems proper.

## COUNT VIII: VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964
### (Retaliation)

148.    Plaintiff incorporates herein the allegations contained in paragraphs 1 through 35, inclusive, as though same were fully re-written here.

149.    Plaintiff had the right to voice his grievances to the Defendant regarding the unlawful activities being committed by the Defendant as well as the fact that he was being discriminated against.

150.    When Defendant terminated the Plaintiff by claiming that the Plaintiff was "the problem" and that the Plaintiff's work performance was poor, it retaliated against Plaintiff for exercising his rights.

151.    Toby, white Executive Chef, at all times relevant hereto, acted on behalf of the Defendant, and acted within the scope of his duties.

152.    Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of Title VII of the Civil Rights Act of 1964.

153.    Upon information and belief, Defendant's unlawful employment practices were done with malice or with reckless indifference to the protected rights of Plaintiff. Defendant, by and through its officers and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of those in direct contact with Plaintiff. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum to be determined at trial.

154.    Plaintiff has engaged the undersigned attorneys to prosecute his claims and is entitled to recover his attorney's fees from Defendant pursuant to statute.

WHEREFORE, Plaintiff hereby requests that this Court: (a) declare that Defendant's termination of Plaintiff was in violation of Title VII of the Civil Rights Act of 1964; (b) grant Plaintiff judgment against Defendant to compensate him for past and future pecuniary losses, including injury to his professional reputation, and emotional pain and suffering caused by Defendant's termination of Plaintiff in an amount to be determined at trial and in accordance with Title VII of the Civil Rights Act of 1964; (c) award Plaintiff pre-judgment and post-judgment interest; (d) award Plaintiff punitive and compensatory damages as permitted by law; (e) award Plaintiff the costs of this action, together with his reasonable attorneys' fees incurred herein, pursuant to statute; and (f) grant Plaintiff such other and further relief as the Court deems appropriate.

### COUNT IX: VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT OF 1992
**(Retaliation)**

155.    Plaintiff incorporates herein the allegations contained in paragraphs 1 through 35 inclusive, as though same were fully re-written here.

156.    Plaintiff had the right to voice his grievances to the Defendant regarding the unlawful activities being committed by the Defendant as well as the fact that he was being discriminated against.

157.    When Defendant terminated the Plaintiff by claiming that the Plaintiff was "the problem" and that the Plaintiff's work performance was poor, it retaliated against him for exercising his rights.

158.    Toby, white Executive Chef, at all times relevant hereto, acted on behalf of the Defendant, and acted within the scope of his duties.

159.    Plaintiff is entitled to such affirmative relief as may be appropriate, including, but not limited to, lost wages, benefits, and compensation for emotional distress, pursuant to the provisions of the FCRA, Chapter 760.

160.    Upon information and belief, Defendant's unlawful employment practices were done with malice or with reckless indifference to the protected rights of Plaintiff. Defendant, by and through its officers and/or supervisors, authorized, condoned, and/or ratified the unlawful conduct of those in direct contact with Plaintiff. Therefore, Plaintiff is also entitled to punitive damages from Defendant in a sum to be determined at trial.

161.    Plaintiff has engaged the undersigned attorneys to prosecute his claim and is entitled to recover his attorney's fees from Defendant pursuant to statute.

WHEREFORE, Plaintiff hereby requests that this Court: (a) declare that Defendant's termination of Plaintiff was in violation of the FCRA; (b) grant Plaintiff judgment against Defendant to compensate him for past and future pecuniary losses, including injury to his professional reputation, and emotional pain and suffering caused by Defendant's termination of Plaintiff in an amount to be determined at trial and in accordance with the FCRA; (c) award Plaintiff pre-judgment and post-judgment interest; (d) award Plaintiff punitive and compensatory damages as permitted by law; (e) award Plaintiff the costs of this action, together with his reasonable attorneys' fees incurred herein, pursuant to contract and/or statute; and (f) grant Plaintiff such other and further relief as the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted this 20th day of December, 2019.

By:  /s/ *Michelle Cohen Levy*
Michelle Cohen Levy, FBN 0068514
The Law Office of Michelle Cohen Levy, P.A.
4400 N. Federal Highway
Lighthouse Point, Florida 33064
P: (954) 651-9196
Michelle@CohenLevyLegal.com
Counsel for Plaintiff