**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No.: 19-cv-63130-SINGHAL/Valle**

KAREEM WILLIAMS,

    Plaintiff,

v.

THE LAS OLAS COMPANY, INC. d/b/a
Riverside Hotel,

    Defendant.

_____/

## ORDER ON DEFENDANT'S PARTIAL MOTION TO DISMISS

For just under nine months in 2018, Plaintiff Kareem Williams worked at the Riverside Hotel[1] as a line cook. Compl. ¶¶ 12–13 (DE [1]). In this action, he sues Defendant The Las Olas Company, Inc. ("Hotel") for various claims of discrimination and retaliation. The Hotel has filed an answer as to certain counts and moves to dismiss others. Currently before the Court is Defendant's Partial Motion to Dismiss (DE [12]).

**I.    BACKGROUND[2]**

Williams, born in the U.S. Virgin Islands, self-describes as "a gay, dark-skinned black man." Compl. ¶ 4 (DE [1]). He makes two principal allegations against the Hotel: In his nine months as an employee there, (1) "he was the target of ongoing harassment

---

[1] "Riverside Hotel" is the fictitious name for The Las Olas Company, Inc. and are one in the same for legal purposes.

[2] The facts presented in this order address only the limited issues before the Court in the motion to dismiss, namely discrimination based on sex.

and discrimination"; and (2) "[h]e was also retaliated against for voicing his objection to the Hotel's unlawful activities." *Id.* ¶ 15. To the latter, when he noticed a questionable hiring practice by the Hotel—that it hires "only Haitians" as dishwashers and only "other minorities" as line cooks—he voiced concern with the head chef and the manager. *Id.* ¶¶ 17, 25. Upon doing so, the manager ("Ramos") became hostile towards him and used vulgar language to deny such discriminatory hiring practices. *Id.* This ostensibly played an aggravating factor in Williams's termination. *Id.*

As to the claims of harassment and discrimination, Williams appears to focus on a single incident taking place in "July/August 2018" where "Ramos and other employees" were engaged in conversation about partying. *Id.* ¶ 21. According to Williams, "Ramos said, '[W]hen I dance with someone, I get a bulge.' He then said to [Williams] directly, 'look at my bulge now.'" *Id.* As discussed further below, Williams maintains this interaction with Ramos occurred only because Williams is a gay man. *Id.*

For additional reasons not germane to the nature of this motion to dismiss, the employment relationship between the Hotel and Williams continued to devolve until, eventually, the Hotel fired Williams in December 2018. *Id.* ¶ 33–35. This lawsuit ensued.

## II. PROCEDURAL POSTURE

On December 20, 2019, Williams filed this nine-count complaint against the Hotel, alleging:

I. Discrimination on the basis of race under Title VII;
II. Discrimination on the basis of race under FCRA;
III. Discrimination on the basis of color under Title VII;
IV. Discrimination on the basis of color under the FCRA;
V. Discrimination on the basis of sex under Title VII;
VI. Discrimination on the basis of sex under the FCRA;

2

> VII. Violation of the Florida Whistleblower Act;
> VIII. Unlawful retaliation under Title VII; and
> IX. Unlawful retaliation under the FCRA.

*See generally id.* Specifically as to Counts V and VI, the basis of Williams's claim is simple: Ramos made the "bulge" comment to him only because he is gay. *Id.* ¶ 108. In other words, "Ramos would not have made this comment to a heterosexual male because a heterosexual male would not be expected to look at another male's genital region." *Id.*

The Hotel filed an answer as to Counts I, II, III, IV, VIII, and IX, *see generally* Answer (DE [11]), and moves to dismiss Counts V, VI, and VII, *see generally* Partial Mot. to Dismiss (DE [12]). In his response brief, Williams now stipulates to a dismissal with prejudice as to Count VII, the claim for violating the Florida Whistleblower Act. *See* Pl.'s Resp (DE [19]). Accordingly, Count VII is dismissed with prejudice without further comment from the Court. That leaves the motion to dismiss Counts V and VI, sex-based discrimination claims, the sole remaining issue before the Court.

The Hotel argues that, despite *sex*-based discrimination being prohibited by Title VII, *sexual-orientation*-based discrimination is not. In the alternative, while Eleventh Circuit case law applies Title VII discrimination based on "gender non-conformity," Williams's complaint is devoid of any allegations that he is a transgendered male. Finally, the Hotel argues that, even if *sexual orientation* were actionable under Title VII, Williams has failed to allege similarly situated comparators. The Court agrees with all three arguments raised by the Hotel.

3

## III. TITLE VII AND SEXUAL ORIENTATION

Under Title VII of the Civil Rights Act of 1964 ("Title VII"), it is unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). It is likewise unlawful under state law. *See* Florida's Civil Rights Act ("FCRA"), Fla. Stat. §§ 760.01–.11. The Court looks to applicable Eleventh Circuit case law in applying both statutes. *Harper v. Blockbuster Entm't. Corp.*, 139 F.3d 1385, 1388 (11th Cir. 1998) ("The Florida courts have held that decisions construing Title VII are applicable when considering claims under the Florida Civil Rights Act, because the Florida act was patterned after Title VII.").

Williams titles Counts V and VI as "sex" discrimination, but the allegations clearly speak to discrimination based on his *sexual orientation*. While the Court finds bona fide discrimination of any style abhorrent in a civilized society, Title VII does not prohibit discrimination based on *sexual orientation*. So said the Fifth Circuit in *Blum v. Gulf Oil Corp.*, 597 F.2d 936, 938 (5th Cir. 1979),[3] with the Eleventh Circuit reaffirming in *Evans v. Georgia Regional Hospital*, 850 F.3d 1248, 1255 (11th. Cir. 2017). The courts of this district have been abundantly clear in applying *Blum* and *Evans*: "It is well established that discrimination based on sexual orientation, however reprehensible, is not prohibited by either Title VII or the FCRA." *Candina v. Univ. of Miami*, 185 F. Supp. 3d 1343, 1352 (S.D. Fla. 2015); *see also Bill v. City of N. Lauderdale*, 2013 WL 1289165, at *1 n.3

---

[3] *See also Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (adopting all Fifth Circuit cases issued on or before September 30, 1981, as binding precedent).

4

(S.D. Fla. Mar. 26, 2013); *Anderson v. Napolitano*, 2010 WL 431898, at *4 (S.D. Fla. Feb. 8, 2010).

Stated again, Williams's allegations include harassment that Ramos "would not have made . . . to a heterosexual male because a heterosexual male would not be expected to look at another male's genital region." In other words, Williams points to his sexual preference as *the* factor in Ramos's harassment of him. Simply, viewing all facts in the light most favorable to Williams and assuming every allegation in the complaint is true, Title VII does not provide Williams a remedy.

Further, the Court finds Williams's argument in response simply unpersuasive. He writes: "[D]iscrimination based on sexual orientation is not *yet* actionable . . . ." Pl.'s Resp. 1 (DE [19]) (emphasis in original). While the Court cannot entirely discern what Williams means by this, that the Eleventh Circuit has spoken on this issue is sufficient for this Court to foreclose the matter. *See Stellmacher v. Bd. of Trs.*, 2008 WL 11422481, at *5 (N.D. Ala. Dec. 15, 2008) ("This court has no discretion to depart from binding precedent as laid down by the United States Court of Appeals for the Eleventh Circuit.").[4]

Even in the absence of Eleventh Circuit case law on point, Congress did not include the term "sexual orientation" in the statute; thus, the plain language is clear. *See United States v. Steele*, 147 F.3d 1316, 1318 (11th Cir. 1998) ("[W]e must presume that Congress said what it meant and meant what it said."); *see also Iselin v. United States*, 270 U.S. 245, 251 (1926) (reasoning that adding words to statutes "transcends

---

[4] The Court declines to opine on Williams's use of the word "yet" and his imposition of some sort of temporal aspect on "when" sexual orientation will be actionable.

5

the judicial function"). Williams's plight for protection under Title VII would be best addressed to the Congress, not this Court.

To the extent Counts V and VI allege discrimination and harassment based on his sexual orientation, Williams cannot state a claim as a matter of law. No amount of amending can cure this. The counts must be dismissed.

## IV.     TITLE VII AND "GENDER NON-CONFORMITY"

Williams offers an alternative theory to save Counts V and VI. Consistent with his casting the claims as "sex" discrimination, he argues a Title VII claim for discrimination based on sexual orientation is effectively the same as a claim for discrimination based on "gender non-conformity." Pl.'s Resp. 1–2 (DE [19]). This, the Eleventh Circuit has stated, *is* covered by Title VII. *Glenn v. Brumby*, 663 F.3d 1312, 1317 (11th Cir. 2011). Williams states: "Where the line on gender non-conformity begins and ends remains fluid." Pl.'s Resp. 1–2 (DE [19]).

However, the complaint, as currently filed, is sorely lacking allegations that would plead a claim for discrimination based on "gender non-conformity" under *Glenn*. Even in his response brief, Williams continues to point to the incident with Ramos and the vulgar invitation to look at Ramos's "bulge." Williams valiantly tries to parse meanings, arguing "Ramos did not direct a heterosexual male to look at his bulge, as gender conforming norms would dictate that he shouldn't do so because a male would not look at another male's genital area." *Id.* at 2. The Court is unconvinced. This is rebranding "sexual orientation" as "gender non-conformity."

Nevertheless, while the Court should avoid matters that speak *only* to social and policy issues, not legal issues, Williams is entitled to replead the complaint. Dismissal

6

with prejudice, at this stage, would be unfair. If Williams can provide allegations previously not pleaded that satisfy a claim under *Glenn* for "gender non-conformity," he should be afforded the opportunity.

Finally, because the Court has granted leave to amend for the foregoing reasons, the Court will also grant, without comment, leave to amend to identify comparators. *See* Pl.'s Resp. 2 (DE [19]). Accordingly, it is

**ORDERED AND ADJUDGED** that Defendants' Partial Motion to Dismiss (DE [12]) is **GRANTED** accordingly:

(1) Count V and Count VI are **DISMISSED WITHOUT PREJUDICE**. If Williams can cure the pleading deficiencies discussed above, he is directed to file an amended complaint within **ten (10) days** from the date of this order.

(2) Count VII is **DISMISSED WITH PREJUDICE**.

**DONE AND ORDERED** in Chambers, Fort Lauderdale, Florida on this 18th day of March 2020.

                                                                      _____
                                                                      **RAAG SINGHAL**
                                                                      **UNITED STATES DISTRICT JUDGE**

Copies to counsel via CM/ECF